IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDRINA MOORE, | : | |
| Plaintiff, | : | No. 23-cv-5184-JMY |
| | : | |
| vs. | : | |
| | : | |
| USAA CASUALTY INSURANCE | : | |
| COMPANY d/b/a and/or a/k/a USAA, | : | |
| Defendant. | : | |

**MEMORANDUM**

**Younge, J.**                                                    **June 10, 2024**

Currently before the Court is a motion for judgment on the pleadings filed by the

Defendant.  After a review of Defendant's motion for judgment on the pleadings, the Court

provided the Parties with notice of its intent to convert Defendant's motion into a motion for

summary judgment because the Court found it necessary to consider evidence outside of the

pleadings.  (Order, ECF No. 11.)  The Court will now apply the summary judgment standard to

its review of issues raised in Defendant's motion.  The Court further finds this matter appropriate

for disposition without oral argument.  See Fed. R. Civ. P. 78, L.R. 7.1(f).  For the reasons set

forth below, Defendants' Motion will be granted.

**I.      FACTS BACKGROUND PROCEDURAL:**

Plaintiff filed her Complaint in the Philadelphia Court of Common Pleas Compulsory

Arbitration Program.  (Compl., Notice of Removal, ECF No. 1-1.)  The Complaint was later

removed to the Eastern District of Pennsylvania.  (*Id.*)  Plaintiff seeks to have Defendant provide

uninsured motorist coverage up the policy limit of $20,000.  (*Id.*)  To summarize theories pled in

the Complaint, Plaintiff alleges that Defendant breached its contract with her when it denied

insurance coverage based on the Ride Share Exclusion.  (*Id.* ¶¶ 19, 25.)  Plaintiff further alleges

that Defendant's claims handling process and denial of her claim for uninsured motorist coverage constituted insurance bad faith under Pennsylvania statute, 42 Pa. C.S. § 8371.  Count I of the Complaint is a request for declaratory judgment which seeks to have the Court interpret the automobile insurance policy in favor of Plaintiff.  (*Id.* ¶¶ 30-36.)  Count II asserts a claim for breach of contract based on Defendant's failure to provide uninsured motorists coverage.  (*Id.* ¶¶ 37-41.)  Count III asserts a statutory bad faith action under 42 Pa. C.S. § 8371.  (*Id.* ¶¶ 42-48.)  Count IV is a claim for estoppel that Plaintiff voluntarily dismissed.[1]  (*Id.* ¶¶ 48-50.)

Plaintiff was allegedly injured in an automobile accident that occurred on or about July 22, 2022.  (Id. ¶ 1.)  Plaintiff alleges that she was making a delivery for Uber Eats at the time of the accident.  (*Id.* ¶¶ 2, 7.)  The Complaint alleges that the driver of the other vehicle involved in the accident was the cause of the accident.  (*Id.* ¶ 1.)  The Complaint further alleges that the other driver and the registered owner of the vehicle that caused the accident cannot be located.  (*Id.* ¶ 8.)  The Complaint also alleges that the insurance carrier for the registered owner denied coverage for Plaintiff's liability claim because its insured failed to cooperate in the investigation of the claim.  (*Id.* ¶¶ 1, 8-9.)  Plaintiff avers that she presented a claim for uninsured motorist benefits to Defendant after the liability claim was denied by the other carrier.  (*Id.* ¶ 15.)  Plaintiff alleges that the claim for uninsured motorist benefits was denied pursuant to a Ride Share Exclusion.  (*Id.* ¶ 19.)

Plaintiff admits that she was in the process of making a delivery for Uber Eats at the time of the accident.  (*Id.* ¶¶ 2, 7.)  Therefore, she was engaged in ride sharing activity in conjunction with the Transportation Network Company known as Uber Eats.  The policy of automobile

---

[1]  Plaintiff voluntarily dismissed her claim based on a theory of estoppel as set forth in Court IV of the Complaint.  (Plaintiff's Response in Opposition page 2 Fnt 1, ECF No. 8.)

insurance at issue in this matter includes an endorsement titled "Amendment of Policy

Provisions – Ride Sharing Activity", which amends the terms of the Policy effective July 4,

2019.  One of those terms is an exclusion, which reads in pertinent part:

> EXCLUSION
>
> We do not provide coverage under this policy for accident or loss that occurs while any covered person is operating or occupying a vehicle engaged in ride sharing activity in conjunction with a Transportation Network Company. . .
>
> This exclusion applies during the time the covered person is logged on to the Transportation Network Company's online-enabled application or platform and available to accept a passenger or delivery assignment, whether or not a passenger or delivery assignment has been accepted. When a passenger or delivery assignment has been accepted, coverage is excluded while the passenger or property to be delivered is occupying your covered auto.

(Amendment of Policy Provision – Ride Share Exclusion, (Form RSGPCW(01) (July 4, 2019); ECF No. 13-1 page 176.)

   "Ride sharing activity" is defined in that section as "use of your covered auto to provide

prearranged transportation of persons or property in conjunction with a Transportation Network

Company.  (*Id.*)  A "Transportation Network Company" is defined as "a person or entity that

provides prearranged transportation services for compensation using an online-enabled

application or platform to connect clients with drivers who use their personal vehicles to provide

the requested transportation.  Examples of a Transportation Network Company include, but are

not limited to Uber, SideCar and Lyft."  (*Id.*)

   The original insurance Policy at issue in the litigation – Policy Number 01884 67 67C

7102 4 – was issued to Plaintiff on October 22, 2020 and ran to April 22, 2021.  (Jose Segura

Affidavit, Supplemental Brief in Support of Motion to Dismiss, Exhibit A, ECF No. 13-1 (which

references and includes a copy of the Underwriter File – Policy number 01884 67 67C 7102 4 –

attached as Exhibit I to Mr. Segura's affidavit).  Defendant came forward with creditable

evidence to establish that when the Policy was originally issued to Plaintiff, it included the Ride

Share Exclusion (Form RSGPCW(01)) under the July 4, 2019 Amendment, and that the Ride

Share Exclusion remained effective at the time of the accident.  (Segura Affidavit ¶¶ 5, 21.)

Defendant also came forward with evidence to establish that Plaintiff was provided with a copy

of the insurance Policy that included the Ride Share Exclusion when she purchased the original

policy of insurance.  (*Id.* ¶¶ 7-10.)  Defendant's evidence suggests that Plaintiff was given access

to the full Policy, including all of its terms, amendments, endorsements and conditions, through

an account summary available to her electronically on Defendant's mobile application.  (*Id.* ¶¶ 4,

20.)  Plaintiff admits she knew how to access and use the mobile application and that she used

the application to access and make changes to her insurance Policy.  (Declaration of Fredrina

Moore ¶¶ 5-6, 8, 12, ECF No. 12-1.)

Defendant not only established that it provided Plaintiff with a copy of the insurance

Policy, but it also established that it made additional efforts to convey the fact that the Policy

contained the July 4, 2019 Amendment – Ride Share Exclusion (Form RSGPCW(01)).  (Segura

Affidavit ¶¶ 7-10.)  For example, the Policy packet provided on October 21, 2020 stated that,

"Coverage exclusions apply when your vehicle is used in ride sharing.  If you need coverage for

ride sharing activities, we're pleased to offer Ride Share Gap Protection.  For details, see the

enclosed documents titled "Amendment of Policy Provisions – Ride Sharing Activity" and

"Important Information About Ride Sharing Activity."  (Underwriter File USAA CIC 2432,

Segura Affidavit ¶ 7, Exhibit A, ECF No. 13-1 page 133.)  The initial Policy packet provided on

October 21, 2020 also provided a page titled "Important Information About Ride Sharing

Activity."  (Underwriter File USAA CIC 2477, Segura Affidavit ¶ 9, Exhibit A, ECF No. 13-1

page 178.)  That page stated in part that "Ride sharing is the use of your personal vehicle to

provide pre-arranged transportation of persons or property for compensation." (*Id*.)  That page also stated in part that, "Your USAA auto policy does not provide any coverage while your insured vehicle is used in ride sharing. . .  If you are involved in ride sharing, you may have a gap in coverage.  It's important to understand the coverage provided by the TNC [Transportation Network Company], so we recommend you contact them for more information." (*Id.*)  That page also stated in part that "We're pleased to offer Ride Share Gap Protection, which will extend coverage during the time you are available to accept a passenger or delivery assignment, but have not yet accepted a passenger or delivery assignment." (*Id.*)  The packet initially provided with original Policy contained instructions to let Plaintiff know that limited gap protection could be purchased for the time when an insured was "available to accept a passenger or delivery assignment but [had] not yet accepted a passenger or delivery assignment."

On March 10, 2021, Plaintiff was again notified of the fact that ride sharing activities were excluded from her Policy.  (Moore Declaration ¶ 12, ECF No. 12-1; Segura Affidavit ¶ 10.)  Plaintiff admits, on March 10, 2022 – four months prior to the subject accident – that she received a communication stating that "[c]overage exclusions apply when your vehicle is used in ride sharing.  If you need coverage for ride sharing activities, we're pleased to offer Ride Share Gap Protection.  Please contact us for more information or to obtain a quote." (*Id.*)  Plaintiff also admits that she had access to and was capable of operating Defendant's mobile application. (*Id.*)  Defendant repeatedly advised Plaintiff of the fact that she could access the Policy to "view and change [her] policy coverages" or to "view and print [her] policy documents".  (Segura Affidavit ¶¶ 6, 11-19.)  Plaintiff had not paid the premium to purchase Ride Share Gap Protection.

Plaintiff filed this case in the Philadelphia Court of Common Pleas.  After filing a Notice of Removal, Defendant filed a motion to dismiss under federal rule of civil procedure 12(b)(6) which the Court converted to a motion for summary judgment.  The Court will now grant Defendant's motion and dismiss this action.

II.   **LEGAL STANDARD:**

Summary Judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case."  *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001).  Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## III.    DISCUSSION:

Plaintiff argues that she should be permitted to proceed with her request for declaratory relief as well as on her claim for breach of contract and insurance bad faith.  In support of her request for declaratory relief and breach of contract, she argues that the language used to form the Policy of insurance and its inclusion of the Ride Share Exclusion is ambiguous and unclear. Specifically, Plaintiff asserts that the Ride Share Exclusion (Form RSGPCW(01)) applies only to preclude payment for liability claims brought by third parties, and that it does not apply to claims for first party benefits associated with uninsured motorist coverage – like the claim at issue in this case.  In support of her argument that the Ride Share Exclusion does not apply to her first party uninsured motorist claim, Plaintiff cites to purported inconsistent positions that Defendant took during its claims handling and processing of her claim.  For example, Defendant initially provided insurance coverage for her damages claim, but then later refused to provide additional coverage based on its application of the Ride Share Exclusion.  Plaintiff also cites the fact that Defendant initially provided her with an incomplete version of the policy that did not include the

Ride Share Exclusion (Form RSGPCW(01)), and then later provided a certified version that included the Ride Share Exclusion along with other amendments and endorsements.

Plaintiff also argues that the Ride Share Exclusion is invalid because the Defendant did not provide her with notice of the fact that the Ride Share Exclusion was included in the terms of the insurance Policy.  (Supplemental Brief page 6; ECF No. 12.)  Plaintiff claims that she did not know that the insurance Policy contained a Ride Share Exclusion prior to the July 22, 2022, automobile accident.  In opposition to Defendant's motion to dispense with her bad faith claim, Plaintiff raises the same arguments that she advances in favor of her request for declaratory relief and breach of contract claim.  She argues that Defendant acted in bad faith when it unreasonably denied her uninsured motorist claim.

**A.**      **Plaintiff's Request for Declaratory Relief & Claim for Breach of Contract**:

The arguments that Plaintiff presents in support of her request for declaratory relief and her claim for breach of contract fail.  Plaintiff's claim of purported ambiguity in the Policy language and application of the Ride Share Exclusion does not hold up to logical analysis.  A plain reading of the language used in the Ride Share Exclusion in the context of the Policy as a whole establishes that no ambiguity exists.  Nothing in this language indicates that the Ride Share Exclusion (Form RSGPCW(01)) applies only to liability claims and not to uninsured motorists claims.  The Ride Share Exclusion uses clear, defined terms that are not "reasonably susceptible of different constructions and capable of being understood in more than one sense", and thus are not ambiguous.  *See Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986) (discussing contractual ambiguity in the context of lease terms and provisions).  The language in the policy relating to this Ride Share Exclusion is clear and unambiguous; therefore, the Court will interpret the policy language giving effect to its terms.  *See Sikirica v. Nationwide*

*Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *Carpenter v. Federal Ins. Co.*, 637 A.2d 1008, 1011 Pa. Super. 1994).  *See also Crowley v. GoAuto Ins. Co.*, 286 So.3d 466, 470-71 (La. App. 2019) (affirming decision that exclusion for claims associated with ride sharing activity was applicable, clear and unambiguous).

The fact that Defendant initially decided to issue payment for Plaintiff's wage loss claim, does nothing to change the terms of the insurance Policy or the inclusion of the Ride Share Exclusion.  The mere fact that Defendant initially decided to provide Plaintiff with first party benefits – even if its decision was based on its own erroneous belief that Plaintiff was entitled to recover – does not establish that Plaintiff has a further right to recover. *Schoffstall v. Prudential Prop. & Cas. Ins. Co.*, 667 A.2d 748, 751 n.6 (Pa. Super. 1995); *Keystone Filler & Manufacturing Co., Inc. v. American Mining Ins. Co.*, 179 F. Supp. 2d 432, 443 (M.D. Pa. 2002), aff'd, 55 Fed. App'x 600 (3d Cir. 2002).  Along these same lines, the fact that the Defendant produced a redacted version of the insurance Policy during discovery does nothing to change the terms of the Policy and its inclusion of the Ride Share Exclusion.

Plaintiff's arguments are unconvincing when she cites to the fact that the certified copy of the insurance Policy was different that the version of the policy Defendant initially produced. Plaintiff highlights what amounts to an error during discovery when Defendant initially produced an incomplete version of the policy.  An oversight when producing discovery materials which was corrected when Defendant produced a certified copy of the insurance Policy which included the Ride Share Exclusion (Form RSGPCW(01)).  The Court notes that the incomplete version of the Policy that was initially produced contained a declaration page that referred to the Ride Share Exclusion; however, the initial production did not include attachments that amended the Policy like, i.e., the Ride Share Exclusion (Form RSGPCW(01)).

Plaintiff's argument as it pertains to lack of notice of the inclusion of the Ride Share Exclusion (Form RSGPCW(01)) as a provision in the insurance Policy also fails to stand-up to logical analysis.  The fact pattern, as outlined in the fact section hereinabove, does not support Plaintiff's claim of lack of notice.  Plaintiff admits that she had access and was able to use the Defendant's mobile application to make changes to her insurance Policy.  (Moore Declaration ¶¶ 5-6, 8, 12.)  Defendant came forward with credible evidence to establish that copies of the insurance Policy which included the Ride Share Exclusion along with additional information about the Ride Share Exclusion were accessible through the mobile application.

Plaintiff cannot avoid the application of the Ride Share Exclusion based on the fact that she failed to read the Policy terms and exclusions.  The Pennsylvania Supreme Court has held that an insured who fails to read an insurance policy cannot avoid the application of policy terms and exclusions.  *See Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305 (1983) (holding that insured was bound to policy terms and explaining that "[F]ailure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.").  The *Standard Venetian* court rejected the lower court's conclusions that actual notice to the insured was required because the actual contract "has historically been the true test of parties' intentions."  *Standard Venetian*, 503 Pa. at 306.  Plaintiff's professed "lack of knowledge or understanding", *Standard Venetian*, 503 Pa. at 302, does not allow her to avoid the exclusion.

**B.     Plaintiff's Bad Faith Claim under 42 Pa. C.S. § 8371:**

The Court will dismiss Plaintiff's bad faith claim.  The courts applying Pennsylvania law have explained that bad faith exists where there is a "frivolous or unfounded refusal to pay proceeds of a policy."  *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir.

2000).  In *Rancosky v. Washington National Insurance Co.*, 642 Pa. 153, 156 (Pa. 2017), Pennsylvania's Supreme Court held that to recover under a claim of statutory bad faith, the plaintiff must show "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim."  The first part of the test for bad faith focuses on clear and convincing proof by an objective measure of the lack of reasonableness of the insurer's conduct. *Rancosky*, 170 A.3d at 170.  "[A] reasonable basis is all that is required to defeat a claim of bad faith" even if it is shown later that the insurer was incorrect.  *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

Plaintiff's claim for insurance bad faith, 42 Pa. C.S. § 8371, fails for all the reasons previously discussed in the above analysis when the Court dismissed Plaintiff's request for declaratory relief and claim for breach of contract.  Plaintiff's uninsured motorist loss was not a covered loss based on the Ride Share Exclusion included in the insurance Policy.  Therefore, Defendant was not unreasonable and did not act in bad faith because it had a valid reason to deny uninsured motorist coverage.  Plaintiff cannot recover on a theory of bad faith because Plaintiff failed to establish that Defendant did anything wrong when it applied the terms of the Ride Share Exclusion to the fact pattern of this case and refused to provide coverage.  *Pittas v. Hartford Life Ins. Co.*, 513 F. Supp. 2d 493, 504 (W.D. Pa. 2007) ("A plaintiff cannot prevail on a bad faith claim…where there is no breach of an underlying contractual obligation.").

**IV.     CONCLUSION:**

For these reasons, the Court will grant Defendant's motion and dismiss this action.


BY THE COURT:

  /s/ John Milton Younge
Judge John Milton Younge